UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EARNEST D. BOLTON,

        Petitioner,

v.                                 Case No. 3:19-cv-41-HLA-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Earnest Bolton, an inmate of the Florida penal system, initiated this action on December 28, 2018,[1] by filing a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Bolton challenges two 2014 state court (Duval County, Florida) judgments of conviction for attempted sexual battery and lewd and lascivious molestation on a victim younger than twelve in Case Number 2013-CF-587, and two counts of sexual battery while in a familial or custodial authority in Case Number 2013-CF-588. Bolton raises six grounds for relief. Respondents oppose the Petition. See Answer to Petition for Writ of Habeas Corpus (Response; Doc. 15)

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

with exhibits (Resp. Ex.). Bolton filed a brief in reply. <u>See</u> Petitioner's Traverse to Response to Order to Show Cause (Reply; Doc. 16-5). This case is ripe for review.

## II. Relevant Procedural History

In Case Number 2013-CF-587, the State of Florida (State) charged Bolton by way of amended Information with two counts of sexual battery (counts one and two) and one count of lewd or lascivious molestation (count three). Resp. Ex. A at 54. The victim, S.E., was the same in all three counts. In Case Number 2013-CF-588, the State charged Bolton with two counts of sexual battery upon a child by a person in familial or custodial authority. Resp. Ex. B at 17. M.S. was the victim in each count. Bolton moved to consolidate both cases for purposes of trial, which the circuit court granted. Resp. Exs. A at 66-69; B at 35-36. Following a trial, a jury found Bolton guilty in Case Number 2013-CF-587 of attempted sexual battery upon a person less than twelve years of age, sexual battery upon a person less than twelve years of age, and lewd or lascivious molestation. Resp. Ex. A at 255-57. In Case Number 2013-CF-588, the jury found Bolton guilty as charged as to both counts. Resp. Ex. B at 215-16. On November 19, 2014, the circuit court sentenced Bolton in Case Number 2013-CF-587 to a term of life as to all three counts, with a minimum mandatory of life in prison as to count two. Resp. Ex. A at 300-06. That same day, in Case Number 2013-CF-588, the circuit court found Bolton to be a sexual predator

and sentenced him to a term of life as to both counts. Resp. Ex. B at 253-59. The circuit court ordered the sentences in Case Number 2013-CF-588 to run concurrently with each other but consecutively to the sentences imposed in Case Number 2013-CF-587. Id.

Bolton filed separate appeals of his convictions and sentences with Florida's First District Court of Appeal (First DCA). Resp Exs. A at 322; B at 270. The First DCA consolidated the appeals "for purposes of travel and the record." Resp. Ex. F. In his initial briefs in both appellate cases, Bolton argued that the trial court erred when it:  (1) excluded testimony of K.E.; and (2) allowed the introduction of Williams[2] rule evidence. Resp. Exs. J; K. The State filed answer briefs, Resp. Exs. L; M, and Bolton filed reply briefs, Resp. Exs. N; O. The First DCA per curiam affirmed the judgments in both cases without written opinions on December 4, 2015. Resp. Exs. P; Q, and issued the mandates on December 22, 2015, Resp. Exs. R; S.

On July 25, 2016, Bolton filed pro se motions for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motions) in both cases. Resp. Ex. T at 1-21. In the Rule 3.850 Motions, Bolton argued that his counsel was deficient for failing to:  (1) object to Kristi Green's testimony

---

[2] Williams v. State, 110 So. 2d 654, 66 (Fla. 1959) (holding "that evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused[, including facts about other crimes or bad acts,] is admissible unless precluded by some specific exception or rule of exclusion.").

concerning the credibility of S.E.; (2) call five witnesses; (3) object to improper closing arguments; (4) present testimony and argument in opposition to the State's motions in limine; and (5) move to disqualify the trial judge. Id. Bolton also raised a sixth claim that the cumulative effect of counsel's errors deprived him of a fair trial. Id. On August 29, 2016, the circuit court denied relief. Id. at 22-26. On May 25, 2017, the First DCA reversed the circuit's court denial with instructions to either hold an evidentiary hearing or attach portions of the record that refuted Bolton's claims. Resp. Ex. W. The First DCA issued the mandate on June 20, 2017. Resp. Ex. X.

On remand, the circuit court again denied the Rule 3.850 Motions without an evidentiary hearing but attached to the order portions of the record refuting Bolton's claims. Resp. Ex. CC. Bolton appealed, Resp. Ex. DD, but moved to voluntarily dismiss the appeal, Resp. Ex. EE. On July 7, 2017, the First DCA dismissed the appeal. Resp. Ex. FF. Bolton petitioned the First DCA for a belated appeal, Resp. Ex. JJ, which the First DCA denied, Resp. Ex. LL. The First DCA also denied Bolton's motion for rehearing. Resp. Exs. MM; NN.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Bolton's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir.

2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such

as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal

7

courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow,

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[4] <u>supra</u>, at 747–

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

> 748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied

---

[5] Wainwright v. Sykes, 433 U.S. 72 (1977).
[6] Murray v. Carrier, 477 U.S. 478 (1986).

11

> fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>,
> 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting

Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."

> Id., at 693, 104 S. Ct. 2052. Counsel's errors must be
> "so serious as to deprive the defendant of a fair trial, a
> trial whose result is reliable." Id., at 687, 104 S. Ct.
> 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the Strickland test

before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part

Strickland test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet the

prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243,

1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed." Strickland, 466 U.S. at

697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is
> a most deferential one." Richter, - U.S. at -, 131 S. Ct.
> at 788. But "[e]stablishing that a state court's
> application of Strickland was unreasonable under §
> 2254(d) is all the more difficult. The standards created
> by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review
> is doubly so." Id. (citations and quotation marks
> omitted). "The question is not whether a federal court
> believes the state court's determination under the
> Strickland standard was incorrect but whether that
> determination was unreasonable - a substantially

14

> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Bolton alleges that his trial counsel failed to object to Kristi Green's testimony that purportedly vouched for the credibility of victim S.E. Petition at 5. Bolton contends that "Green testified that despite no physical findings during her examination of S.E., the result of her exam was 'sexual abuse by history.'" <u>Id.</u>

Respondents contend the claim in Ground One should be dismissed as unexhausted. Response at 23-25. Although Bolton raised this claim for relief

in his Rule 3.850 Motions, Respondents argue that because Bolton voluntarily dismissed his appeal of the denial of the Rule 3.850 Motions, the First DCA never reviewed the merits of this claim following the initial remand. Id. As such, it remains unexhausted. Bolton did not address the exhaustion issue in his Reply.

The record reflects that Bolton raised a similar claim in the Rule 3.850 Motions. Resp. Ex. T at 3-8. The First DCA initially remanded the matter to the circuit court with directions to either attach portions of the record refuting the claim or hold an evidentiary hearing. Following remand, the circuit court entered an amended order denying relief that attached record evidence refuting Bolton's claims. Resp. Ex. CC. Bolton appealed, Resp. Ex. DD, but moved to voluntarily dismiss the appeal, Resp. Ex. EE, which the First DCA granted, Resp. Ex. FF. Although Bolton petitioned the First DCA for a belated appeal, Resp. Ex. JJ, the First DCA denied the request to belatedly appeal the adverse ruling on his Rule 3.850 Motions. Resp. Ex. LL. As Bolton voluntarily dismissed his appeal and could not belatedly appeal the order, Bolton did not complete the state court appellate process. Therefore, this claim is unexhausted. See Boerckel, 526 U.S. at 845. Bolton has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Accordingly, the claim for relief in Ground One is due to be dismissed as unexhausted.

Even if properly exhausted, Bolton would not be entitled to relief. The University of Florida First Coast Child Protection Team (CPT) assisted the State in its investigation of S.E.'s allegations. Resp. Ex. C at 281. The CPT employed Green as an advanced registered nurse practitioner to conduct medical evaluations of child sexual assault victims. Id. at 281-82. The State called Green as an expert witness in child medical examinations and child abuse and also as a fact witness because she conducted a medical examination of S.E. Id. at 283-84. Prior to the medical examination, a case coordinator interviewed S.E. and created a "short history of what the child ha[d] disclosed[.]" Id. at 284-85. Based on the history S.E. provided, Green decided to examine S.E.'s vagina. Id. at 284-86. Green found no evidence that confirmed or negated S.E.'s sexual abuse allegations. Id. at 287-88. However, Green testified that 96% of the time, there are no physical findings during these types of medical examinations. Id. at 287. At the conclusion of the examination, Green testified that she made the following findings and recommendations:

> My findings were that of sexual abuse result by history and that the physical findings were consistent with the history and neither confirm nor negate allegations of sexual abuse. Since many types of sexual abuse leave no physical findings, this exam should not be viewed as evidence that sexual abuse did not take place.
>
> And my recommendations were to follow up with her primary care doctor, no contact with the alleged

perpetrator and that [S.E.] should be referred for
counseling.

Id. at 287-88.

When read in context, Green did not vouch for the victim's credibility.
Instead, Green recounted her findings and recommendations following her
physical examination of S.E. Those findings were based on S.E.'s answers to
questions the case coordinator asked, which Green referred to as S.E.'s
"history." This is not vouching for S.E., but a recognition that the allegations
are solely supported by S.E.'s statements. As such, any objection would have
been meritless, and counsel is not deficient for failing to make a meritless
objection. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th
Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless
argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting
that "it is axiomatic that the failure to raise nonmeritorious issues does not
constitute ineffective assistance."). Bolton has failed to establish deficient
performance or prejudice and, therefore, is not entitled to relief on the claim in
Ground One.

## B. Ground Two

Next, Bolton argues that his trial counsel was ineffective because he
failed to call Demetrius, Devonte, and Brianna Bolton, as well as Detective
William Katsacos as witnesses. Petition at 7. Bolton contends that Demetrius

18

and Brianna would have testified that S.E.'s brother, K.E., "threatened to call police and 'tell them something to get their dad in trouble[.]'" Id. Bolton maintains that Demetrius and Devonte could testify that "K.E. exposed his penis to Devonte and put it in his face." Id. According to Bolton, Katsacos "would have testified that K.E. told him that he performed oral sex on his sister S.E. because she wanted to know what it felt like while watching pornography."

According to Respondents, Bolton failed to exhaust this claim because he voluntarily dismissed his appeal of the circuit court's order denying relief. Response at 26-28. Once again, Bolton did not address his alleged failure to exhaust in his Reply. The record reflects that Bolton raised a similar claim in his Rule 3.850 Motions, Resp. Ex. T at 8-11, which the circuit court denied following remand of the reversal of its first order denying relief, Resp. Ex. CC. Bolton voluntarily dismissed his appeal of that order, which deprived the First DCA of the opportunity to review the merits of the claim. Accordingly, Bolton failed to properly exhaust this claim. He has not alleged cause or the existence of a miscarriage of justice to overcome his failure to exhaust. Thus, the claim in Ground Two is due to be dismissed as unexhausted.

Nevertheless, even if Bolton has exhausted this claim, he is not entitled to relief. Bolton has failed to establish the relevancy of K.E.'s alleged statements or actions. He has provided no evidence that K.E. conspired with

19

S.E. to get Bolton in trouble. Likewise, no such evidence was introduced at trial that would suggest the same. The record reflects that counsel called K.E. as a defense witness. Resp. Ex. C at 441-62. K.E. testified that he did not like Bolton because he felt Bolton was trying to replace K.E.'s dead father and he neglected him. Id. at 447-48. According to K.E., Bolton's relationship with K.E.'s mother resulted in K.E. not being allowed to see his grandparents anymore either. Id. at 449. Notably, K.E., S.E., and M.S. all denied that K.E. or anyone else convinced S.E. or M.S. to make up their allegations against Bolton. Id. at 255-58, 388-89, 399, 458-62. Additionally, K.E. testified that S.E. seemed scared around Bolton during the months leading up to Bolton's arrest. Id. 454. K.E. noticed this change and asked S.E. if Bolton was abusing her, and she confirmed that Bolton had been abusing her. Id. at 454-55. K.E. further testified that he would watch pornographic videos with S.E. Id. at 452.

This testimony does not provide a factual basis on which to support a claim that K.E. conspired with the victims to fabricate the allegations against Bolton. Likewise, the purported witness testimony that K.E. threatened to call police and get Bolton in trouble does not establish a reasonable inference that the victims contrived the allegations. Bolton relies entirely on speculation to reach that conclusion. However, speculation is insufficient to support a claim for heabeas relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot

support an ineffective assistance of counsel claim). Accordingly, counsel cannot be deemed deficient for failing to call witnesses to testify as to this incident.

Regarding K.E.'s conduct towards Bolton's children, Bolton has failed to establish its relevancy. K.E.'s lewd actions toward a third party neither proves or disproves that Bolton sexually abused S.E. or M.H. Counsel cannot be deemed defective for failing to bring forth irrelevant evidence. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. As such, this claim fails.

As to Katsacos' alleged testimony, at trial, counsel attempted to elicit additional testimony from S.E. and K.E. concerning an incident in which S.E. asked K.E. to perform oral sex on her while they were watching a pornographic video because she wanted to know what it was like. Id. at 422-23. This incident occurred after S.E. told K.E. about Bolton molesting her. Id. at 424. Following a proffer of the testimony from both S.E. and K.E., the circuit court found the testimony inadmissible. Id. at 258-78, 421-34. In light of the circuit court's refusal to admit this testimony, the circuit court would not have permitted Katsacos to provide hearsay testimony on the same matter. Again, counsel is not deficient for failing to raise a meritless issue. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. For the above reasons, relief on the claim in Ground Two that counsel was deficient for failing to call these witnesses is due to be denied.

## C. Ground Three

Bolton contends that his trial counsel failed to object to improper prosecutorial comments. Petition at 8. During closing arguments, Bolton alleges that the "[p]rosecutor commented on S.E.'s intellectual and mental capacity with no evidence to support claims . . . ." Id. Respondents again maintain that the claim is unexhausted. Response at 28-30. And for the reasons discussed as to Grounds One and Two, the Court agrees. Bolton did raise this issue in his Rule 3.850 Motions, Resp. Ex. T at 11-14, but he did not complete the appellate process, Resp. Exs. EE; FF. As such, he failed to properly exhaust this claim. See Boerckel, 526 U.S. at 845. Bolton also failed to allege, let alone establish, the existence of cause or a manifest injustice to excuse his failure to exhaust. Accordingly, the claim in Ground Three is due to be dismissed as unexhausted.

Even assuming this claim was properly exhausted, Bolton is not entitled to relief. For purposes of federal habeas review, "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Parker v. Matthews, 567 U.S. 37, 45 (2012) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). The Court notes that "opening statements and closing arguments are not in themselves evidence, their

22

purpose 'is to assist the jury in analyzing the evidence.'" <u>Burchfield v. CSX Transp., Inc.</u>, 636 F.3d 1330, 1335 (11th Cir. 2011) (quoting <u>United States v. Hasner</u>, 340 F.3d 1261, 1275 (11th Cir. 2003)). Indeed, during closing arguments "a prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial." <u>United States v. Adams</u>, 339 F. App'x 883, 886 (11th Cir. 2008) (quoting <u>United States v. Johns</u>, 734 F.2d 657, 663 (11th Cir. 1984)).

Although in the Petition Bolton fails to identify the comments he contends counsel should have challenged, he expands on this claim in his Reply. According to Bolton, counsel should have challenged the prosecutor's comments that S.E. had limited intellectual capabilities. Reply at 17. The record reflects that Michelle Eaton, S.E.'s mother, testified that S.E. had dyslexia, hearing issues, and "ha[d] delayed skills". Resp. Ex. C at 180-81, 201. The mother testified that S.E. struggled with reading comprehension but that changed after S.E. received hearing aids; however, they still had "to work with her on things." <u>Id.</u> at 180. Michelle Eaton also testified that the school created an individual educational program for S.E. that included a special teacher that assisted S.E. in understating what her teachers were teaching. <u>Id.</u> at 180-81. Notably, Bolton himself testified that S.E. had a learning disability. <u>Id.</u> at 486-87.

In light of this record evidence, the Court finds the prosecutor's comments were not improper. The evidence presented to the jury supported the prosecutor's comments that S.E. had a learning disability and diminished mental capacities in comparison to other children her age. As this was a reasonable comment on the evidence presented, counsel would have had no basis on which to object. Therefore, counsel was not deficient. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Accordingly, Bolton has failed to establish an ineffective assistance of counsel claim and he is not entitled to relief on the claim in Ground Three.

### D. Ground Four

In Ground Four, Bolton asserts that his trial counsel failed to object to or otherwise challenge the State's motions in limine. Petition at 10. According to Bolton, the "State filed two motions in limine to prevent Petitioner the ability to present witnesses and exculpatory testimony depriving Petitioner [of] his due process rights." Id. Bolton does not detail what testimony or argument counsel should have provided. Id.

Respondents contend that this claim like those in Grounds One through Three are unexhausted. Response at 31-32. Although Bolton raised a similar claim before the circuit court in his Rule 3.850 Motions, Resp. Ex. T at 14-17, his dismissal of the appeal following remand prevented the state appellate court from reviewing the claim, Resp. Exs. EE; FF. As a result, he failed to

adequately exhaust this claim. See Boerckel, 526 U.S. at 845. Bolton does not argue cause to overcome his failure to exhaust. He likewise does not allege the existence of a miscarriage of justice. Accordingly, the claim in Ground Four is due to be dismissed as unexhausted.

Nevertheless, even if properly exhausted, the claim is without merit. In the Reply, Bolton argues he should have been allowed to present evidence that K.E. had been molesting S.E. since she was nine years old and that K.E. had been arrested and convicted for the same conduct. Reply at 18-21. According to Bolton, this evidence would have supported his defense theory that it was K.E. and not Bolton who had actually sexually assaulted S.E. Id.

Prior to trial, the State filed two motions in limine. Resp. Ex. A at 72-75. In the first motion in limine, the State argued that the defense should be prohibited from presenting evidence related to the criminal case of K.E. and how Michelle Eaton did or did not report the case. Id. at 72. The State also sought to prohibit evidence that Michelle Eaton was molested as a child. Id. The second motion in limine was boilerplate in fashion and unrelated to Bolton's argument. Id. at 74-75. However, counsel did argue against the first motion in limine because he wanted to introduce evidence that could possibly impeach S.E., but that evidence was not directly related to the defense theory Bolton suggests here. Resp. Ex. C at 109-15.

Bolton's argument is speculative and, therefore, insufficient to warrant federal habeas relief. S.E. specifically testified at trial that Bolton touched her vagina with his fingers, lips, and penis. Id. at 222-31. The interview S.E. had with the CPT was also played at trial, during which S.E. made the same allegations and gave more specific details about Bolton's conduct. Id. at 315-52. No evidence presented at trial suggested, let alone established, S.E.'s allegations were false or contrived. The defense theory that Bolton posits here does not establish that Bolton could not have also molested S.E. Without some factual nexus linking K.E. to the assaults S.E. described, Bolton's claim is entirely speculative and, therefore, fails. See Tejada, 941 F.2d at 1559. In light of the above, relief on the claim in Ground Four is due to be denied.

### E. Ground Five

Bolton contends that his trial counsel "failed to move to disqualify the trial judge." Doc. 1-5. According to Bolton, the trial judge made comments during pre-trial and trial proceedings that put him "in fear of not receiving a fair and impartial adjudication of his trial." Id. Bolton provides no additional information concerning the content or context of those comments. He does, however, allege, without providing citations to the trial record, that at trial, the judge assisted "the prosecution by giving advice to [sic] how to object." Id.

According to Respondents, Bolton failed to exhaust this claim. Response at 33-34. Despite Bolton raising this claim in his Rule 3.850 Motions, Resp. Ex.

26

T at 17, he failed to allow the state appellate court to address it on the merits, Resp. Exs. EE; FF, and it remains unexhausted. Bolton has not alleged cause and prejudice to excuse his failure to exhaust or the existence of a miscarriage of justice if the Court did not address the merits. As such, the claim is due to be dismissed as unexhausted.

Nevertheless, even if exhausted, Bolton is not entitled to relief. Bolton takes issue with a comment the trial judge made during the defense's case in chief in which the judge questioned why "people don't object to some things." Reply at 23. Bolton maintains that this establishes the judge gave advice to the prosecution on how to object. Id. at 22-24. However, the record reflects that this comment was made after the prosecutor had already objected and the comment did not lead to additional objections from the prosecutor. Resp. Ex. C at 444-47. Moreover, the objection the prosecutor raised was overruled. Id. When read in context, this was not advice to the prosecutor but the trial judge's own off-the-cuff rumination on "people" generally not objecting to things to which he felt they should object. Bolton cannot establish how this comment prejudiced his case as he alleges no facts demonstrating that the judge's comments aided the prosecution. As such, Bolton's claim of ineffective assistance of counsel fails and relief on the claim in Ground Five is due to be denied.

## F. Ground Six

In his final ground for relief, Bolton argues that the cumulative effect of his counsel's errors deprived him of a fair trial. Doc. 1-6. Where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). As detailed above, each of Bolton's claims are not only unexhausted, they are meritless. It follows then that his claim of cumulative error provides no basis for habeas relief. See id. Accordingly, relief on the claim in Ground Six is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Bolton seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Bolton "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

28

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Bolton appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of November, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:      Earnest Bolton #J54103
        Counsel of record

30